## CONTEMPT PROCEEDINGS AGAINST PUBLIC OFFICERS.

Circuit Court for Coshocton County.

STATE OF OHIO, ON RELATION OF JOHN R. MAPLE, v. GAIL S. HAMILTON, MAYOR OF COSHOCTON.*

Decided, July, 1912.

*Suspended Official Restored by Order of Court—Attempt to Recover Salary During Period of Suspension—By Contempt Proceedings Against Municipal Treasurer and Other Officials.*

1. The relator was removed from his office of chief of police by the mayor of the city. In a mandamus proceeding brought for that purpose by the relator, the mayor was ordered to restore him to his office of chief of police in the city with all the privileges, prerogatives and emoluments thereunto belonging, which order was finally affirmed by the Supreme Court. The mayor restored the relator to his office of chief of police. Subsequently the relator, not having been paid his salary and fees during the period covered by his suspension, filed a motion in the circuit court asking for a rule against the mayor, director of public safety, city auditor, and treasurer of such city, requiring them and each of them to show cause why they should not be attached for contempt for not paying the relator his salary and fees during such period of suspension. *Held:* That the director of public safety, city auditor and city treasurer, not having been parties to the original action and proceeding in which the order was made, can not be attached for contempt in disobeying an order made therein, and that the mayor, having restored the relator to his office, had performed all the duty devolving upon him.

2. In a subsequent hearing, it appearing that on the application of the relator, three members of the bar were named by the court to prosecute such contempt proceeding against the above named city officials, and the question was presented as to whether or not the three attorneys named should be allowed and recover as costs in the case fees either against the defendant or the city. *Held:* That the case is not one in which attorney fees as costs can be allowed.

---

*Affirmed without opinion under the title of *State, ex rel, v. Cassingham, Mayor* (June 24, 1913); judgment as to costs set aside and vacated, and costs in the Supreme and Circuit Courts taxed against the State (December 16, 1913), 88 Ohio State.

*Bert F. Voorhees,* for relator.
*John J. Adams,* City Solicitor, contra.

NORRIS, J. (sitting in place of VOORHEES, J.); SHIELDS, J., and POWELL, J., concur.

On the 31st day of July, 1909, the mayor of Coshocton issued an order removing John R. Maple, the relator, from his office of chief of police of the city of Coshocton, and appointed another in his place.

The relator, on the 7th day of August, 1909, filed a petition in the court of common pleas, asking for an order that he be restored to said office of chief of police with all the privileges, prerogatives and emoluments thereunto belonging. The court of common pleas ordered the relator restored to said office, and on appeal the same judgment was rendered in the circuit court, and the judgment of the circuit was affirmed by the Supreme Court, and the case remanded to the circuit court for execution.

After the decision of the Supreme Court, to-wit, on January 1st, 1912, the mayor of Coshocton restored the relator to his office and he has since that time been holding the office and acting as chief of police. Since January 1st the relator has been tendered his salary as such chief of police, but has not been paid or tendered his salary as such chief of police during the period from August 1st, 1909, to January 1st, 1912.

On May 21st, 1912, the relator filed a motion in this court asking for an order against George W. Cassingham, mayor, R. F. Timmons, director of public safety, Evan O. Evans, city auditor, and Harold Hershman, treasurer of the city of Coshocton, requiring them and each of them, to show cause why they should not be attached for contempt for disobeying the peremptory writ of mandamus issued in this case by this court in the following particulars as specified:

"1st. For not complying with the order of the court contained in the alias peremptory writ of mandamus heretofore issued in this case May 21st, 1912.

"2d. For not restoring to the said John R. Maple as chief of police of the city of Coshocton, Ohio, all the privileges, prerogatives and emoluments incident thereunto belonging, and all

property and rights of which he was deprived and disposed of by reason of the order and wrongful acts aforesaid, as they were commanded to do, by the alias peremptory writ of mandamus issued herein May 21st, 1912.

"Said emoluments and prerogatives incident to the offce of the chief of police of the city of Coshocton, Ohio, consists of his salary of $840 per year payable semi-monthly, from August 1st, 1909, to May 15th, 1912, amounting to $2,345, and fees of the chief of police of the city of Coshocton, Ohio, in state cases prosecuted and convictions had before the mayor of the city of Coshocton, Ohio, from August 1st, 1909, to May 23d, 1912, the amount of which fees is unknown to relator, not having access to the records of the said mayor of the city of Coshocton, Ohio, but the amount is claimed and alleged as a fact to be $750."

It is further stated that the relator has been tendered a warrant for his salary as chief of police from the 1st day of January, 1912, to date, which was refused by the relator. An affidavit of the relator was filed in support of the motion stating, among other things, that he gave each of the defendants on the 21st day of May, 1912, written notice of the issuance of the writ of mandamus on May 21st, 1912.

Cassingham, the mayor, answered that he has fully restored the relator to his office and he has since been discharging the duties thereof, and he further answers with reference to the first claim by the relator, which is not necessary now to consider.

The director of public safety answers, stating that he was never a party to any action in the circuit court or any other court, in which a writ of mandamus was issued directing him to do anything with reference to restoring John R. Maple to his office or the emoluments thereof, and further that it is no part of his duty to restore the chief of police, and further answered that another, during the interim, was acting as chief of police and was paid the salary, etc.

The city auditor makes substantially the same answer, so far as it is necessary to consider the same.

The city treasurer moves to dismiss the proceedings because the same do not specify any facts showing any disobedience or resistance of an order of the court, and further does not show that he has refused to pay any warrant issued in behalf of the

State, ex rel, v. Hamilton.          [Vol. 19 (N.S.)

relator, and that he has no right to pay the salary of the chief of police except on warrant.

Considerable testimony was offered on both sides in the case, much of which it is not necessary now to consider.   The director of public safety, the city auditor and city treasurer were not parties to the proceeding and were never made parties thereto except by the filing of the motion and affidavit charging them with contempt of court in not obeying the mandate and decree of the court.

The relator's claim is that they did not, each in his particular office, perform the necessary acts to pay the relator his salary as chief of police while this action was pending in the courts, and while another was acting in his stead, and also pay him certain fees which he claims he was entitled to.

A legal question is raised by the answers which we do not consider it necessary for us now to pass upon, as it is not properly before us, and that is whether or not the relator is entitled to a salary during the time he was unlawfully kept from his office and another was acting in his stead and was paid the salary. We do not think this question was settled by any judgment rendered in this case up to this time.

This court is asked to punish certain officers of the city for contempt in disobeying its order, but the order was only directed to the mayor, ordering him to restore the relator to his office with the emoluments, etc.   The mayor has done all that he can do in carrying out that order.   He has restored the relator to his office.   He has nothing to do with paying him his salary or his fees.   The proceeding was brought only against the mayor. No other officer was named.   No other officer was served with any order in this case.   The only notice of any kind that the other defendants had in this case is a notice of the order which relator claims he served on the 21st of May, 1912.

What was the order?   To restore the relator to his office with emoluments, prerogatives and perquisites.   The director, auditor and treasurer, had nothing to do with restoring him to his office. What were the emoluments, etc., to which relator is entitled? Relator does not even himself know to what fee he makes claim,

and it would seem from the authorities cited that the law is not entirely clear under the facts in this case as to what salary the relator is entitled. The city solicitor contends, and doubtless advised the other officers, that relator was not entitled to the salary during the time he was not performing the duties of his office.

Were these officers of the city to decide this question at their own peril, and if they decided against the relator and were wrong, to be punished therefor, as being in contempt of the court?

We think first that the order was too indefinite, as held:

"In order that a commitment may issue under any circumstances, as already stated, the precise thing to be done by the party proceeded against, must be stated in the judgment or order." *Cross* v. *Butler*, 10 N. Y. Sup., 444 (57 Hun., 110); *Pritett* v. *Pressley*, 62 Ind., 491.

Again, the order was never served upon the director, auditor and treasurer. It is claimed they were given notice of such order.

"Before a party can be brought into contempt for not complying with an order of court, such order must be served on him." *Hennessy* v. *Nicol*, 105 Cal., 138 (38 Pac., 649); *Perrine* v. *Broadway Bank*, 53 N. J. E., 211 (33 A. P. L., 404); *Tebo* v. *Baker*, 77 N. Y., 33; *Ex parte Willand*, 73 E. C. L., 544.

But can these officers be punished for not obeying an order issued in a case to which they were not parties? Each of these parties had the right to litigate the question as to relator's salary and fees. This is not an action brought against the city which might bind the officers of such municipal corporation. It was merely an action against the mayor of the city and the order was directed to him. None of the other parties sought to be punished have had any day in court except to answer this charge made against them in this court.

We think the case of the *Second National Bank of Sandusky* v. *Becker*, 62 O. S., 289, decisive of this question, if authority we need. Quoting from the concluding portion of the opinion in that case:

"As has already been noted, they were not parties to the original action against Becker, nor before the court, either by process or appearance, when the order was entered in that action requiring them to redeliver the attached property to the sheriff or pay the judgment then rendered in favor of the bank against Becker. The court was therefor without jurisdiction to make the order that was then entered against them. That order was the foundation of the subsequent proceeding for contempt. In that proceeding they were only notified to show cause why they had not redelivered the property in compliance with the previous order. No suit was brought against them on the undertaking, nor opportunity given them to plead or make defense to any claim of liability thereon, or be heard according to the usual course of legal proceedings. It can scarcely be claimed that this was due process of law."

What is the foundation of this proceeding for contempt? It is an order issued to the mayor only. The other parties have never had an opportunity to be heard as to any defense they might have against the claim made by relator. We do not think that to now hold them guilty of contempt would be due process of law. The mayor, having complied with the order so far as he is able, is not guilty of contempt. The motion of the relator must therefore be denied and the rule discharged.

The case was further heard on the application of relator for an allowance of attorneys' fees as costs in the case. Upon the application of relator three members of the bar were named by the court to prosecute the proceedings for contempt.

The question arises as to whether or not the three attorneys appointed should recover, as costs in the case, attorneys fees either against the defendants or the city of Coshocton. The city of Coshocton was never a party to any of the proceedings. It is claimed that inasmuch as this is a case in which the authority and dignity of the court itself was involved, that attorneys fees may be collected of the city notwithstanding the judgment in this case.

We think some confusion has arisen with reference to contempt proceedings. There are two classes of what are denominated acts of contempt. They are defined in the Cyclopedia of Law and Procedure, Vol. 9, page 5, as follows:

"A criminal contempt is conduct that is directed against the dignity and authority of the court."

This is the contempt provided for in Section 12136 of the code and was the contempt charge in the case of *Myers* v. *State*, 46 Ohio St., 473, cited by counsel. In that case the court especially appointed counsel to prosecute the case to protect its own dignity and authority in the administration of justice.

"Civil contempt exists in failing to do something ordered to be done by the court in a civil action for the benefit of the opposing party therein."

That is provided for in Section 12137 of the code, where it says: "Certain acts may be punished as for the contempt."

That is the statute invoked in *State* v. *Crites*, 48 Ohio St., 460. The case at bar comes under that statute and is of that class of cases. The complaint is that the defendants failed to do something for the benefit of the relator, *i. e.*, failed to pay any salary and fee. Again, in 9 Cyc., 35:

"Proceedings for contempt to enforce a civil remedy and to protect the rights of parties litigant should be instituted by the aggrieved parties, or those who succeed to their rights, or some one who has a pecuniary interest in the right to be prosecuted. If, however, the proceeding is to vindicate the authority of the court and is criminal in its nature, the state is the real prosecutor."

The learned editor cites numerous authorities in support of the above quoted text. Among others, *Lester* v. *People*, 150 Ill., 408; *Secor* v. *Singleton*, 35 Fed., 376; *Latimer* v. *Barmore*, 81 Mich., 592.

In *People* v. *Compton*, 1 Duer., 512, it is stated that a solid and obvious distinction exists between contempt cases strictly and those acts denominated contempts, which are punished as such only for the purpose of enforcing a civil remedy. To the same effect is *Secor* v. *Singleton*:

"It would seem to follow that an injunction obtained to protect merely a private right is so far within the control of the party obtaining it, and is so far a matter of individual concern, that only those persons who have a present interest in the right to be protected can be heard to complain of its violation."

We can find no authority authorizing the recovery of attorneys fees in this kind of a case. The policy of this state has been generally against the recovery of attorneys fees as a part of the judgment or costs. In *Cole* v. *R. R. Co.,* 10 Ohio St., 372, pages 409-410, the court says:

"However desirable and just it may appear in particular cases to charge upon the defendant or his property, fees of counsel representing the plaintiff, such is not the policy of this state. Even the small docket fees which were allowed were abolished by the Legislature. We know of no rule or principle which will entitle us to deviate from the policy in this case." See *Cole* v. *Rosser,* 53 Ohio St., 12; 50 Ohio St., 591.

What is "right and equitable" in a mandamus case? In Section 12298 it is provided that a mandamus case where a judgment for defendant, all costs shall be allowed against the relator as above found. This is a proceeding in the original case which was a mandamus case: The defendants were required to show cause in that case why they should not be punished as for contempt. The court has found that they were not guilty and has ordered them discharged. It seems to us that the conclusion is irresistible that the relator should pay the costs, and it is so ordered.

The late case of *Brundige* v. *Village of Ashley,* 62 Ohio St., 526, is a much stronger case for the allowance of attorneys fees than this, yet such allowance was denied by the Supreme Court. The only cases in which attorneys fees can be asked as costs in this state are in partition cases as provided by statute and in certain trust cases where all parties have a common interest in the trust fund. These cases are well stated in the case of *Hopple* v. *Hopple,* 4 N.P.(N.S.), 255, of which the case of *Cole* v. *Tucker,* 35 Ohio St., 581, and *Mason* v. *Alexander,* 44 Ohio St., 337, are examples. How can the costs, including attorneys fees, be charged against the city in this case anyway? It never was a party to either of the proceedings.

The statute on the subject found in the following sections of the code: 11624, costs allowed to plaintiff when he recovers the money, judgment or specific real or personal property; 11626,

in certain cases costs are allowed to the defendant; 11628 provides that in other cases costs may be allowed in such manner as ''right and equitable.''

---

## EFFECT OF TAKING A SEVERAL JUDGMENT BY DEFAULT.